*Tagged Opinion*
*For publication*



**ORDERED in the Southern District of Florida on September 14, 2016.**

_____

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                              Case No. 10-32254-BKC-LMI

JOSE LOSADA                                         Chapter 13
CARIDAD LOSADA

        Debtors.

_____/


**ORDER GRANTING IN PART AND DENYING IN PART**
**<u>MOTION TO REOPEN CASE</u>**


      This matter came before me on June 7, 2016, on Motion of Jose Losada and

Caridad Losada (the "Debtors") to Reopen to Value and Determine Secured Status

of Lien on Real Property[1] (ECF # 152) (the "Motion to Reopen")[2].  The Debtors seek to reopen their chapter 13 case, which the Debtors successfully completed[3], in order to prosecute a Motion to Value with respect to their residence located in Miami, Florida (the "Residence") and strip the lien of the third mortgage holder[4], Space Coast Credit Union, formerly known as Eastern Financial Florida Credit Union ("Space Coast").   I have reviewed the Motion to Reopen, Space Coast's Response in Opposition to the Motion to Reopen[5] (the "Response"), and the Debtors' Reply[6]. For the reasons outlined herein, the Motion is Granted in Part and Denied in Part and the parties are directed to prepare a scheduling order with respect to the trial on the value of the Residence.

[1] The full name of the pleading is Motion to Reopen to Value and Determine Secured Status of Lien on Real Property Nunc Pro Tunc to the Date of Filing the Petition in Accordance with the Confirmed Chapter 13 Plan [or] In the Alternative to Correct Nunc pro Tunc Motion and Order Valuing Lien and for Entry of Judgment Voiding Lien and Memorandum of Law in Support Thereof.

[2] This is the Debtors' second Motion to Reopen.  The Debtors filed an earlier Motion to Reopen (ECF #145) which was withdrawn (ECF #151) after a hearing on the motion but prior to my ruling on the motion.

[3] The Debtors received their discharges on December 2, 2015.

[4] In its Response to the Debtors' Motion to Reopen Space Coast suggests that it is not the holder of a third mortgage on the Residence but rather that it appears to be the holder of the second mortgage on the Residence.

[5] Response and Incorporated Memorandum of Law in Opposition to Debtors' Motion and Brief to Reopen to Correct Nunc Pro Tunc Motion and Order Valuing Lien and for Entry of Judgment Voiding Lien (ECF #157).

[6] Debtors' Reply to Creditor's Response on Motion to Reopen to Value and Determine Secured Status of Lien on Real Property Nunc Pro Tunc to the Date of Filing the Petition in Accordance with the Confirmed Chapter 13 Plan in the Alternative to Correct Nunc Pro Tunc Motion and Order Valuing Lien and for Entry of Judgment Voiding Lien and Memorandum of Law in Support Thereof (ECF #161).

<u>**FACTS AND PROCEDURAL HISTORY**</u>

The Debtors filed a chapter 13 bankruptcy case on July 30, 2010 (the "Petition Date").  The Debtors filed their initial chapter 13 plan on August 12, 2010. The Debtors amended the initial plan at least twice.  Finally, the Debtors' Second Amended Plan (ECF #71) (the "Plan") was confirmed on June 2, 2011 (ECF #87) (the Confirmation Order").

The confirmed Plan provided that Space Coast would be treated as follows:

**IF YOU ARE A SECURED CREDITOR LISTED BELOW, THE PLAN SEEKS TO VALUE THE COLLATERAL SECURING YOUR CLAIM IN THE AMOUNT INDICATED. A SEPARATE MOTION (UTILIZING LOCAL FORM MOTION TO VALUE COLLATERAL IN PLAN) WILL ALSO BE SERVED ON YOU PURSUANT TO BR 7004 and LR 3015-3.**

| Secured Creditor | Description of Collateral and Value of Collateral | Interest Rate | Plan Payments | Months of Payment | Total Plan Payments |
|---|---|---|---|---|---|
| Bank of America (2nd mortgage on homestead) Loan No. xxxx5699 Prop Add: 15482 SW 11th Terr Miami, FL 33194 | Homestead Property $279,395.00 | 0% | N/A | N/A | N/A |
| Eastern Financial (3rd mortgage on homestead) Loan No. xxxx1703 Prop Add: 15482 SW 11th Terr Miami, FL 33194 | Homestead Property $279,395.00 | 0% | N/A | N/A | N/A |

The Confirmation Order provides in its final paragraph –

> To the extent the Plan sought a determination of valuation pursuant to
> Bankruptcy Rule 3012, and no objections were filed or any objections
> were resolved, the terms of the Plan will be binding upon the affected
> secured creditors, and any allowed proof of claim will be secured only to
> the extend [sic] of the value as provided for in the Plan and unsecured as
> to the balance of the claim.

Under the Local Rules of the Bankruptcy Court, in order to value collateral, a debtor must file a motion to value served in accordance with Federal Rule of Bankruptcy Procedure 7004[7]. The Debtors never filed a motion to value Space Coast's collateral with respect to Space Coast's lien. The Debtors apparently attempted to file a motion to value in order to strip Space Coast's lien, but the motion named Bank of America as the lender both in the title of the motion and in the body of the motion (ECF #36) (the "Invalid MTV"). The Order granting the Invalid MTV also identified Bank of America as the lender (ECF #63). Space Coast was never served with either the Invalid MTV or with the order granting the Invalid MTV. There is no evidence that Space Coast was served with a copy of the Plan, although the docket reflects that Space Coast was served with a copy of the Confirmation Order at POB 829514, South Florida, Fl. 33082-9514 (ECF #88). Space Coast denies that it ever received notice of the Plan or of the Confirmation Order.[8]

---

[7] Local Rule 3012-1.
[8] Space Coast filed the Affidavit of Christopher Bloom (ECF #157-1) stating that Space Coast has no record of receiving service of the Plan or Confirmation Order. However, at the hearing on the initial Motion to Value Space Coast's attorney seemed to admit that Space Coast actually did have notice of the Plan but did nothing while it waited for a motion to value to be filed.

4

The Debtors received their discharge in December of 2015 and shortly thereafter reached out to Space Coast for a release of its mortgage.[9]  Space Coast declined.  The Debtors filed their original Motion to Reopen arguing that the Invalid MTV and the order granting the Invalid MTV that improperly named Bank of America as the lender and which were never served on Space Coast, should nonetheless be binding on Space Coast.  I never ruled on that argument because the original Motion to Reopen was withdrawn.

In the Motion to Reopen at issue the Debtors argue that the bankruptcy case should be reopened so that I may consider the Motion to Value (ECF #153) filed simultaneous with the Motion to Reopen, which Motion to Value seeks nunc pro tunc valuation (to the Petition Date) of the Residence.  The Debtors argue that, since the Plan sought to value the Residence, the Confirmation Order should bind Space Coast, and the lien can be stripped based on the Plan and Confirmation Order.  The Debtors further argue that case law supports their request to reopen the case and seek valuation after discharge.[10]

Space Coast counters that the Debtors' Motion to Reopen is barred by laches – Space Coast would be prejudiced if required to value the Residence as of the

---

[9] Under this Court's local rules, any order on a motion to value is conditional until the debtor receives his or her discharge.

[10] The Debtors also renewed their request that I modify the order on the Invalid MTV because Fed.R.Bankr.P. 9024, allows an order to be corrected for a clerical error, or "for any other reason that justifies relief".  The Debtors argue that, since the recording information in the Invalid MTV was the recording information for the Space Coast third mortgage, that I can just simply "correct" the order granting the Invalid MTV.  This argument is completely lacking in merit.  Space Coast was not named in the Invalid MTV or the order; Space Coast was not served with the Invalid MTV or the order. There is no basis in law or fact to suggest that due process has been even remotely satisfied under these circumstances; as the argument is not well founded I will not address the argument any further.

Petition Date six years after the fact.  Moreover, Space Coast argues that case law does not recognize the Debtor's right to rely on a confirmed plan that neither actually valued the Residence, nor that provided actual notice to Space Coast of the intent to value the Residence.

## ANALYSIS

11 U.S.C. §350(b) allows a court to reopen a closed bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause."  "A decision to reopen a case under section 350(b) is based on 'the particular circumstances and equities of each case'.  … When deciding whether to reopen a closed case, courts generally consider the benefit to creditors, the benefit to the debtor, the prejudice to the affected party and other equitable factors." *In re Rodriguez*, 2015 WL 4872343, at *2 (Bankr. S.D. Fla. Aug. 12, 2015).

The Debtors seek to reopen the case for three purposes – first, to determine whether and to what extent Space Coast is bound by the valuation of the Residence in the Plan; second, to determine the Motion to Value; and third, to modify the original Order Granting Motion to Value. As I have already discarded the third argument as being meritless, I will turn first to the Plan and its provisions, and then to the requested Motion to Value.

**The Plan does not strip Space Coast's Lien even if it valued the Residence**

Space Coast argues that the provisions of the Plan are not binding on it because (a) the Plan specifically provided that a separate motion to value would be filed; (b) nothing in the Plan or the Confirmation Order states anything with respect

to the status of Space Coast's lien or the lien being stripped; and (c) neither the Plan nor the Confirmation Order were served on Space Coast in accordance with Fed.R.Bankr.P. 7004 and, besides, Space Coast has no record of having received the Plan or the Confirmation Order.  In support of its argument Space Coast relies on the Eleventh Circuit's decision *Green Tree Acceptance, Inc. v. Calvert (In re Calvert),* 907 F.2d 1069 (11th Cir. 1990).

In *Calvert*, the secured lender received notice that the Court might value its collateral at the debtors' first confirmation hearing; however, the secured creditor failed to send a representative.  At the first hearing, the bankruptcy court made a finding that the secured creditor's interest had never been perfected. Subsequently the debtors filed an amended proof of claim, to which the secured creditor did not object. After filing the amended proof of claim, the debtors filed an amended plan. The bankruptcy court held a second confirmation hearing, however the notice that was sent to the parties indicated that the hearing was a motion to reconsider the first bankruptcy plan; the notice made no mention of the valuation issue. The secured lender attended the second hearing and the bankruptcy court held that the security interest had been perfected. Since the security interest was perfected, the bankruptcy court again considered the original plan and valued the property at issue. The Eleventh Circuit held that the valuation process did not satisfy the requirements of Rule 3012 because the bankruptcy court's notice did not include "notice specifically directed at the security valuation process."

The Debtors counter, citing *United Student Aid Funds, Inc., v. Espinosa*, 559 U.S. 260 (2010), that notwithstanding that the Debtors did not, successfully, file a motion to value as contemplated by the Plan, Space Coast is nonetheless bound by the Plan and Confirmation Order.  The Debtors point out that the Supreme Court in *Espinosa* held that United Student Aid Funds Inc. ("United") was bound by the terms of a chapter 13 plan that would allow Espinosa to discharge the interest on his student loan without a determination of undue hardship, even though (a) a student loan debt can only be discharged through an adversary proceeding and (b) United was not served in accordance with Rule 7004.  The Supreme Court held that United's due process rights were not deprived because United had actual notice of the chapter 13 plan, and because the plan specifically stated " WARNING IF YOU ARE A CREDITOR YOUR RIGHTS MAY BE IMPAIRED BY THIS PLAN". United was bound by the provisions of the plan notwithstanding that the procedural requirements were not met. "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1378. According to the Supreme Court, "actual notice of the filing and contents of Espinosa's plan…more than satisfied United's due process rights." *Id.*

In order to resolve this particular issue I do not need to decide whether *Espinosa* overruled *Calvert* in some way.  Nor do I need to decide whether Space Coast was properly served with the Debtors' original plan or the Confirmation Order.  Even if Space Coast did receive service of the Debtors' originally filed plan,

and is therefore bound by its terms notwithstanding that the Debtors failed to comply with the procedural requirements of Local Rule 3012-1, this dispute is not resolved.

As I already observed, there is nothing on the docket to suggest that Space Coast ever received notice of any version of the Plan other than the Debtor's originally filed plan.  There is no certificate of service, either from the Debtors, or the Chapter 13 Trustee or the Bankruptcy Noticing Center.  So I must look at what the Debtors' originally filed plan stated with respect to Space Coast's lien.  The originally filed plan contains language regarding the treatment of Space Coast virtually identical to that which is set forth in the Plan, with one glaring omission. The Debtors' originally filed plan does not set forth any value for the Residence. The value is blank.  Thus the originally filed plan does not list any proposed value for the Residence; the originally filed plan (and the Plan) makes clear that Space Coast will not receive any payments under the Plan; and the originally filed plan (and the Plan) state that the Debtors will file a motion to value.  Because the originally filed plan does not list any proposed value of the Residence, that portion of the originally filed plan that states "**THE PLAN SEEKS TO VALUE THE COLLATERAL SECURING YOUR CLAIM IN THE AMOUNT INDICATED**" has no import since, at that juncture, there was no "amount indicated".

Space Coast never having been served with any plan that purported to value its collateral, then, *Espinosa* notwithstanding, Space Coast is not bound by the valuation amount of the Residence included in the Plan.  Moreover, even if Space

Coast were bound by the valuation in the Plan, that is all that Space Coast would be bound to, and, according to the Confirmation Order, only with respect to treatment of its allowed claim in the chapter 13 case.

There is nothing in the Plan that addresses Space Coast's lien at all. The request to strip a lien based on a particular valuation is only included in the Court's form motion to value[11] and in the form order[12] granting any such motion. Nothing in the originally filed plan or in the Plan purports in any way to impact Space Coast's lien. The Confirmation Order does nothing with respect to the lien either. The Confirmation Order binds a secured creditor with respect to plan valuation only insofar as it impacts treatment of the allowed claim during the chapter 13 case – "any allowed proof of claim will be secured only to the extend [sic] of the value as provided for in the Plan and unsecured as to the balance of the claim." Since Space Coast never filed a proof of claim, the valuation in the originally filed plan or the Plan is irrelevant.[13]

---

[11] LF-77, which is titled Motion to Value and Determine Secured Status of Lien on Real Property allows the debtor to request:

> an order of the Court (a) determining the value of the real property in the amount asserted in [the] Motion, (b) determining the secured status of the Lender's lien as stated above…. (d) if Lender's secured interest in the real property is determined to be $0, deeming Lender's mortgage on the real property void and extinguished automatically, without further order of the Court, upon entry of the debtor's discharge in this chapter 13 case… .

[12] LF-92, which is titled Order Granting Motion to Value and Determine Secured Status of Lien on Real Property Held By [Creditor's Name],states if applicable:

> Because Lender's secured interest in the Real Property is $0, Lender's mortgage recorded on ___(date)___ at OR BOOK _____ Page _____ of the official records of _____ County, Florida shall be deemed void and shall be extinguished automatically, without further order of the Court, upon entry of the debtor's discharge in this chapter 13 case. If this case is converted to a case under any other chapter or if the chapter 13 case is dismissed, Lender's mortgage will no longer be considered void and shall be restored as a lien on the Real Property.

[13] It is a well established rule of bankruptcy that liens pass through bankruptcy unaffected unless there is a provision of the Bankruptcy Code that clearly allows modification and that is utilized.

Consequently, even if I were to find that Space Coast is bound by the terms of the Plan, such a finding has no consequence with respect to resolution of the dispute between Space Coast and the Debtors.

Because reopening the case to enforce the Plan and Confirmation Order against Space Coast would not have any impact on the Debtors or on Space Coast, there is no point to reopening this bankruptcy case for that purpose.  Thus I now turn to resolution of the real dispute before me – and that is whether, in a fully administered chapter 13 case, in which the Debtors have received their discharge, may the Debtors reopen the case to prosecute a motion that seeks to value a secured creditor's property for the purpose of stripping off the secured creditor's lien.

## Jurisdiction

Space Coast argues that I do not have jurisdiction to adjudicate the new Motion to Value since Space Coast never filed a proof of claim, and therefore never submitted itself to the jurisdiction of the bankruptcy court.  While it is true that Space Coast may not have submitted itself to the jurisdiction of the court, the Debtors' property – the Residence – was subject to the jurisdiction of the Court, as well as any asserted interest of Space Coast in the Residence.[14]  If I do determine that it is appropriate to reopen this bankruptcy case, then this Court's jurisdiction over the Residence will be reinstated as well.

---

*Dewsnup v. Timm*, 502 U.S. 410, 417 (1992). *See In re Canning*, 706 F.3d 64, 69 (secured creditors are not enjoined from "recovering on valid prepetition liens, which, **unless modified or avoided**, ride through bankruptcy unaffected…"(emphasis added)).

[14] *See Johnson v. Home State Bank,* 501 U.S. 78 (1991)(court had jurisdiction over the property in which lender had a lien even if the debtor's personal liability had been discharged); *In re Scantling,* 754 F.3d 1323, 1329-30 (11th Cir. 2014) (allowing debtor to modify lender's rights through section 506(a) and section 1322(b)(2)).

A bankruptcy court has jurisdiction of "any or all cases under title 11 and any or all proceedings arising under title 11, or arising in or related to a case under title 11." 28 U.S.C. §157; *see also* 28 U.S.C. §1334. A proceeding "arising in" a case under title 11 is one that "can take place only in the context in a case under title 11." *In re Gladstone*, 513 B.R. 149, 153 (Bankr. S.D. Fla. 2014). A proceeding "arising under" title 11 is one where the matter deals with "invoking a substantive right created by the Bankruptcy Code." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir, 1999). A "related to" matter does not have to be created by the Bankruptcy Code, so long as it bears on the outcome of the title 11 case. *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d. 784, 788 (11th Cir. 1990). However, once property leaves the estate, the bankruptcy court's jurisdiction is limited, and, in most cases, lost.

Both the Debtors and Space Coast rely on *Cole v. Fifth Third Bank, Inc. (In re Cole)*, 521 B.R. 410, 414 (Bankr. N.D.Ga. 2014). In *Cole*, the chapter 7 debtor moved to reopen her case to value a condominium a few months after receiving her discharge. The court noted that it lost its related-to jurisdiction because the property was technically abandoned under 11 U.S.C. §544(c) when the case was closed. However, the court found that the technical abandonment was not irrevocable and therefore jurisdiction might exist if the court determined that revocation of the technical abandonment was appropriate. [15]

The Debtors rely heavily on *Chagolla v. JP Morgan Chase Bank, N.A. (In re Chagolla)*, 544 B.R. 676 (9th Cir. BAP 2016). In *Chagolla* the bankruptcy court

---

[15] *Compare La Paz at Boca Pointe Phase II Condominium Assoc., Inc. v. Bandy,* 523 B.R. 267, 272 (S.D. Fla. 2014)("abandonment removes property, for the purposes of lien stripping, from the jurisdiction of the bankruptcy court.").

held that it no longer had jurisdiction to value property because the motion to value and avoid the junior lien was filed after the debtors were discharged and the case was closed. On appeal, the BAP overturned the bankruptcy court holding that bankruptcy courts always retain jurisdiction to "implement" or enforce the plan confirmation order. *Id.* at 680.

The issues before me in this case clearly deal with the language of the Plan and enforcement of the Confirmation Order. As many other courts have noted, I have continuing jurisdiction to interpret and enforce a bankruptcy plan. *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 146 (2009) (agreeing with Second Circuit's statement that "[i]t is undisputed that the bankruptcy court[has] continuing jurisdiction to interpret and enforce its own 1986 [settlement agreement and reorganization] orders.")). Moreover, the Debtors have asked me to value the Residence, and I have jurisdiction over the Residence. Therefore, I find that I have jurisdiction to consider the relief sought.

## Laches

Space Coast also argues that laches bars the Debtors' attempt to reopen the case to value Space Coasts' collateral and strip its lien. Space Coast argues that it would be extremely prejudicial to Space Coast to try to appraise property that could have changed in condition or otherwise during that six year period since the Petition Date[16]. The Debtors counter that the Motion to Reopen was filed only five

---

[16] Space Coast also objects to the Debtors' reliance on an "eppraisal" referenced in the Motion to Value, but, in any trial on the value of the Residence the Debtors and Space Coast will need to produce evidence that satisfies the Federal Rules of Evidence, and any objections to such evidence will be addressed at such trial.

months after the bankruptcy case was closed[17] and that it isn't very difficult to appraise a residential property six years later – that appraisers perform historical appraisals all the time.

While there is no time limit on filing a motion to reopen, courts have universally recognized that laches may be a bar to reopening a bankruptcy case. *Cole,* 521 B.R. at 410; *In re Delfino*, 351 B.R. 786 (Bankr. S.D. Fla. 2006).  In order to determine whether laches should be a bar to reopening a bankruptcy case, a court must consider "whether the Debtor was diligent in seeking to reopen the case, and whether there has been prejudice to the creditor." *In re Delfino*, 351 B.R. at 788. In making this determination, "'time delay alone . . . is not sufficient'. . . . Rather, time delay is relevant to the extent it bears on the 'diligence of the debtor in seeking to reopen the case and any prejudice to the opposing creditor if the case were not reopened.'" *Cole,* 521 B.R. at 413 (citations omitted).

Since the Debtors moved to reopen the case only five months after it was closed, I will focus on the prejudice to Space Coast if the case is reopened so that the Debtors may prosecute the Motion to Value.  The determination of whether to reopen a case or not is always left to the discretion of the court, is fact intensive and is based on equitable considerations. *In re Apex Oil Co., Inc*., 406 F.3d 538, 542 (8th Cir. 2005) ("[I]t is within the bankruptcy court's discretion to base its decision to reopen on the particular circumstances and equities of each particular case.").

---

[17] The original motion to reopen was filed only two months after the case was closed on January 8, 2016 (ECF #144).

I must decide whether the Debtors' ability to strip a lien that allegedly had no value when their case was filed, and which lien, but for the negligence of their legal counsel, would have been stripped, is outweighed by the prejudice Space Coast argues it will suffer due to the combination of the six year time delay since the Petition Date and its inability to participate in any distribution on account of what would now be its unsecured claim.

There are several courts that have addressed a debtor's request to reopen a bankruptcy case to value property for the purpose of stripping a lien[18]. The Debtors rely heavily on *Chagolla,* 544 B.R. at 676. In *Chagolla* the debtors filed a motion to reopen for the purpose of filing a motion to value and strip a lien after they had completed their plan and received their discharge. The motion to reopen was filed one year after the case was closed and six years after the debtors' bankruptcy plan was confirmed. The debtors were allowed to reopen their case, and then the motion to value and strip lien was filed.

Similar to the Plan confirmed in this case, the confirmed *Chagolla* plan advised the lender that the debtors intended to file an adversary proceeding to avoid the lender's lien. However, the debtors never filed the adversary proceeding. In overruling the bankruptcy court's dismissal of the motion to value, the BAP held

---

[18] The Debtors also cited *In re Lewis*, 875 F. 2d 53 (3rd Cir. 1989) but that case involved a motion to value filed after plan confirmation but prior to the case being closed.

> In order to bring a motion to avoid lien under § 506(a) after a debtor has received a discharge or the case is closed, at a minimum, the following must be satisfied: first, the confirmed plan must call for avoiding the wholly unsecured junior lien and treat any claim as unsecured; second, the chapter 13 trustee must treat the claim as unsecured pursuant to the plan; and third, the creditor must not be sufficiently prejudiced so that it would be inequitable to allow avoidance after entry of discharge or the closing of the case.

*Chagolla*, 544 B.R. at 671. Although the *Chagolla* court did not address the issue of laches,[19] the court nonetheless acknowledged consideration of prejudice to the creditor as a necessary element.

Space Coast relies primarily on three cases[20] – *Cole*, 521 B.R. at 410; *In re Rauseo*, No. 08-18916-RAM, 2015 WL 1956230 (Bankr. S.D. Fla. Apr. 29, 2015); and *In re Delfino,* 351 B.R. at 786. In *Cole*, the court considered whether "a fully administered, discharged, and closed Chapter 7 case be reopened by the debtor for the sole purpose of stripping off a wholly-unsecured junior lien on real property." 521 B.R. 410. After a couple of false starts, a chapter 7 debtor filed a motion to reopen followed by a lien strip motion five months after her chapter 7 case was closed and she had received her discharge. The court focused on two possible sources of prejudice in allowing a lien strip after a chapter 7 case is closed – the first, not present in either this case or the *Cole* case, is whether the lender had changed after the case was closed; the second, that the creditor "may have failed to gather important evidence at the time that may now be unavailable to them." *Id.* at

---

[19] The issue of laches does not appear to have been raised.

[20] The Debtors also referenced the matter of *In re Cubenas,* Case No. 11-41150-LMI (Bankr. S.D. Fla. Apr. 6, 2016) (order specially setting evidentiary hearing). While that matter also concerned a lengthy delay between the petition date and the proposed motion to value I did not enter any ruling on the dispute. Moreover, all other facts relevant to that dispute between the debtor and the condominium association were otherwise dissimilar to those presented in this case.

414. The court held that the eight month delay (the time between when the case was closed and the lien strip motion was heard) "was not unreasonable under the circumstances" and further held that in any event the lender had not suffered any unfair prejudice because the lender had "equal access to the same appraisal methods Debtor has relied on." *Id.* at 416.

Conversely, in *In re Rauseo*, another chapter 7 case, the debtor waited four years after the chapter 7 case had been closed (six years after the petition date) to file a motion to reopen for the purpose of filing a motion to value and to strip a lien. 2015 WL 1956230 at *1. In denying the motion on the basis of laches the court made two primary observations –first, that the debtors could file a chapter 13 case and seek to value the property, albeit using the value as of the new petition date, and second, that Bank of America could have shared in the distribution to unsecured creditors had the lien been stripped during the chapter 7 case. The court noted it was "not adopting a bright line rule" regarding timing, but that the time periods presented were too long. *Id.* at *2.

In *In re Delfino*, the former chapter 7 debtor sought to reopen his bankruptcy case seven years after he received his discharge, not to file a strip off motion, but rather to file an adversary proceeding to add an omitted creditor. The court denied the motion to reopen on the basis of laches, and inequitable conduct by the debtor's attorney. During the two years prior to the motion to reopen the debtor had actively litigated in state court with the "omitted creditor" and it was only after the debtor received an unfavorable ruling in the state court action that the debtor

17

returned to bankruptcy court seeking to get that litigated claim included in his discharge. The bankruptcy court denied the motion to reopen noting the attorney fees incurred by the creditor in the litigation over the prior two years and the debtor's failure to reopen the case as soon as the omitted creditor filed the state court action. The court also found that reopening a case is subject to the court's equitable discretion and that equity barred the relief because of the inequitable conduct of the former debtor and his lawyer, who, the court found, deliberately litigated in state court for the purpose of running up legal fees. *In re Delfino*, 351 B.R. at 90.

Thus, these courts all considered a variety of factors including a creditor's general knowledge or notice that it might be treated a certain way in a bankruptcy case as opposed to being completely surprised several years later, a creditor's ability to address the challenges of a delayed valuation, and a debtor's deliberate delay to cause prejudice. And, of course, these are only some of the many factors that courts consider on a case by case basis.[21]

I now turn to the facts of the case before me. The prejudice to the Debtors is clear. If I do not grant the motion then the Debtors will either have to file a new chapter 13 case, which would have a negative impact on their fragile rebuilding credit, or pay the lien, which lien they would have probably been entitled to strip.[22]

---

[21] Even though there is more opportunity for a secured creditor in a chapter 13 case, as compared to a chapter 7 case, to have notice of a debtor's intent to value and strip since that intent would usually be reflected in a chapter 13 plan, if there were a significant period of time between the closing of the chapter 13 case and the motion to reopen, the import of that notice is lessened.

[22] After receiving a chapter 13 discharge, a debtor may not receive another chapter 13 discharge for at least 2 years. 11 U.S.C. §1328(f)(2).

On the other hand, if I allow the Debtors to move forward with the motion to value Space Coast may not be able to obtain an appraisal that can accurately reflect the value of the Residence six years ago, and Space Coast will not be able to participate in the distribution to unsecured creditors since the chapter 13 trustee has, obviously, distributed all the funds that were paid over the life of the chapter 13 plan.

In its Objection to Debtor's Motion to Value[23] Space Coast argues it will be prejudiced "with regards to the preservation of evidence where Space Coast was unaware that the Debtors would seek to value the property in the future after the case was closed." First, while I did not need to find whether Space Coast had notice of the Plan for purposes of this Order, as I more fully address below, in light of the fact that Space Coast did absolutely nothing for five years, it is probable that its counsel's observation at the April 5 hearing was accurate – Space Coast knew the Debtors intended to value the Residence and waited for the Debtors to file a Motion to Value. Moreover, other than accessing the Residence, Space Coast hasn't described what other evidence it would have preserved. Space Coast's appraiser will have access to comparables from the relevant time period since those are readily available.

Space Coast's valid concerns regarding changes in the condition of the Residence can be dealt with two ways. First, as a condition of allowing the Debtors to proceed to a valuation hearing, I will require that the appraisers assume that the

---

[23] Objection to Debtor's Motion to Value Collateral and to Determine Secured Status (ECF #158).

Residence was in at least better than average condition on the Petition Date[24].

Second, Space Coast can take discovery to determine if the Residence was altered in

any way since the Petition Date (*e.g.* additions, renovations, etc.).  Thus I find that,

with these accommodations, the prejudice to Space Coast with respect to valuation

arising from the delay can be mitigated if not completely eliminated.

I do not find the equities are in favor of Space Coast with respect to its

inability to participate in the distributions to unsecured creditors.  Space Coast

chose not to file a proof of claim.  Whether or not Space Coast received a copy of any

version of the Plan or the Confirmation Order,[25] Space Coast clearly had knowledge

of the bankruptcy.  Although Space Coast never received a payment from either the

Debtors or the Chapter 13 Trustee for five years, Space Coast did nothing.  Space

Coast did not commence or continue a foreclosure action, Space Coast did not file a

motion for relief from stay, Space Coast did not take any action that would indicate

that it had any expectation of receiving payment on account of its debt.  Thus

having demonstrated a complete lack of interest in receiving payment during the

case, I am hard pressed to find Space Coast's inability to receive a distribution on

account of what would now be its unsecured claim equitably relevant.

Weighing the equities I find that any possible prejudice to Space Coast can be

minimized by the measures I have described herein[26].  Accordingly, I find that

[24] If after discovery it is determined the Residence was in excellent condition on the Petition Date
then the appraisals shall reflect that, but at a minimum the condition will be assumed to have been
above average in the absence of agreement between the parties otherwise.
[25] *But see* note 8, *supra.*
[26] In its Objection to the Motion to Value Space Coast also suggests the Debtors may be relying on
loan information different from that which was in place on the Petition Date.  If the Residence is

laches is not a bar to the Motion to Reopen, and that I will allow the Motion to Value to be considered, subject to whatever legal defenses other than those I have addressed in this opinion, and any factual defenses, Space Coast chooses to raise.

## CONCLUSION

A motion to reopen is subject to the court's discretion. Whether to grant such a motion depends primarily on the equities of the situation and the prejudice to any objecting party. Having considered the written submissions of the parties, arguments of counsel, and all matters of relevant law, and for the reasons more fully outlined above, it is ordered as follows:

a.     The Motion to Reopen is Granted in part and Denied in part.

b.     Space Coast will have 21 days from the date of this Order to submit any additional memoranda regarding the Motion to Value, not including those issues that have been resolved by this order

c.     The parties will meet and confer and then submit my form scheduling order with all the blanks filled in, including the deadline to conclude discovery on the Motion to Value.

### # # #

Copies furnished to:

Jose Blanco, Esq.

Ian Kufkoff, Esq.

*Attorney Blanco is directed to mail a copy of this Order to all interested parties and to file a certificate of service with the Clerk of the Bankruptcy Court.*

being valued as of the Petition Date then all other criteria relevant to the Motion to Value will be as of the Petition Date.